**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVANTI YEARBY,<br><br>Defendant. | Case No.: 7:26-CR-00003-WLS-ALS |

**ORDER**

This matter is before the Court on Defendant Devanti Yearby's motion to suppress. (Doc. 32.) Yearby contends that the affidavit supporting the search warrant relies on false statements and moves for a *Franks* hearing. (*See id.*) Because Yearby has not shown that the affiant deliberately or recklessly included any false statements, his motion for a *Franks* hearing and to suppress the evidence seized in the search is denied.

## I. Factual & Procedural Background

Around September 2023, Valdosta Police Detective Tyler Vander Zaden began investigating Devanti Yearby's single-story duplex after a paid confidential informant told him that Yearby was selling illegal narcotics there. (Doc. 40-1 at 2.) Detective Zaden utilized the informant to conduct three controlled buys at the residence in a two-month period. (*Id.*)

During the first controlled buy around September 2023, the informant purchased drugs within the residence. (Doc. 40-1 at 2.) Around October 2023, the informant conducted another controlled buy. (*Id.*) This time, he was unable to buy the drugs within the residence but contacted the seller in a neighboring driveway. (*Id.*) In November of 2023, the informant made a third controlled purchase and was once again able to do so inside the residence. (*Id.*) After each controlled purchase, the informant identified Yearby as the seller and informed the police that he had seen more bagged drugs within the residence that appeared to be cocaine. (*Id.*) The informant also advised that Yearby and others mentioned that there were firearms within the residence. (*Id.*) Detective Zanden also spoke with Department of Community Supervision Officer Pace Whitaker, who informed him that Yearby was on probation for

possession of a controlled substance with intent to distribute and possession of a firearm during the commission of a felony. (*Id.*)

Police searched the informant before and after each purchase and monitored the controlled buys through a live audio transmission. (*Id.*) After each purchase, police questioned the informant about the events that occurred during the operation and collected a 1 × 1 inch plastic zip-top bag containing the substance they had purchased. (*Id.*) While this substance field-tested positive for cocaine, it was later lab-tested and determined to be α-PiHP—a Schedule I controlled substance.[1] 21 C.F.R. § 1308.11(d)(95).

Detective Zanden presented this information to a Lowndes County Magistrate who issued a search warrant for Yearby's residence. (Doc. 40-1 at 3.) On November 27, 2023, Valdosta Police executed the warrant. (Doc. 40-2 at 1.) In Yearby's bedroom, officers found a firearm, over six grams of methamphetamine, about 385 grams of methamphetamine pills, 38.5 grams of α-PiHP, 16 Tramadol pills, and Yearby's identification documents. (*Id.* at 1–2.) Police also found three additional firearms in the residence along with several unused 1 × 1 inch plastic zip-top bags, a digital scale with marijuana residue, and a further 21.9 grams of methamphetamine pills. (*Id.* at 2.)

On February 10, 2026, a federal grand jury indicted Yearby on four counts: (1) possession with intent to distribute methamphetamine; (2) possession with intent to distribute α-PiHP; (3) possession of a firearm by a convicted felon; and (4) possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1.)

## II. The Motion to Suppress

On September 14, 2026, Yearby filed the instant motion to suppress. (Doc. 32.) Yearby contends that the search warrant was invalid because the supporting affidavit was based on "untrue or fabricated information and does not establish the reliability of the Confidential Informant . . . ." (*Id.* at 4.) He thus argues that the evidence obtained from the search should be suppressed. (*Id.* at 5.)

[1] Because α-PiHP is a positional isomer of α-PHP, and positional isomers of Schedule I hallucinogens are themselves Schedule I hallucinogens, α-PiHP is a Schedule I hallucinogen. 21 C.F.R. § 1308.11(d)(95). A "positional isomer" is a substance with the same molecular formula, core structure, and functional groups as those found in the respective Schedule I hallucinogen. *Id.* § 1300.01(b).

Yearby argues that the informant provided police with false information when he said that Yearby had sold him the drugs. (*Id.* at 4.) Yearby contends that he could not have done so because he was not living at his residence at the time. (*Id.* at 4.) He states that on September 10, 2023, he was seriously injured in a motorcycle incident[2] that caused multiple facial fractures, an injury to his temporomandibular joint, a right hip fracture, a third thoracic vertebra fracture, a cervical fracture, and a collapsed lung. (*Id.* at 3.) Yearby underwent surgery and had pins placed in his neck and hip. (*Id.*) He was discharged five days later and used a walker for several weeks before transitioning to crutches. (*Id.*) He stayed with his mother from about September 15 to November 6, 2023. (*Id.*) Yearby was unable to drive during this period and relied primarily on his brother to take him to his doctor's appointments. (*Id.*) Yearby argues that the informant's statements were false because he was residing with his mother from September 15 to November 6, 2023, and thus could not have sold drugs to the informant during the first two controlled buys. (*Id.* at 4.) And because the informant identified Yearby as the seller each time, Yearby contends that someone else must have sold the drugs. (*Id.*)

In his reply brief, Yearby contends that Detective Zanden recklessly included several false statements in his affidavit. (Doc. 40 at 1–2.) Yearby argues that it was unreasonable for Detective Zanden to believe that the informant had purchased any drugs from Yearby at his residence or in any other location because he conducted no independent investigation and only minimally supervised the informant. (*Id.* at 2.) He also argues that the affidavit does not state that anyone directly observed the informant at his residence and that they instead monitored the buys only by live audio transmission. (*Id.* at 4.) But Yearby has not submitted any supporting affidavit or evidence, other than Detective Zanden's affidavit and application for the search warrant.

## III. Legal Standard

An affidavit in support of search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). But a defendant may challenge an affidavit's validity "if he makes a

[2] In the motion, Yearby describes the incident as a "serious motorcycle accident/assault." (Doc. 32 at 3.) The Government, however, describes it as a " 'questionable' dirt bike accident or assault," and states that, when he arrived at the hospital, Yearby was "incoherent and positive for alcohol, methamphetamine, THC, and opiates." (Doc. 39 at 5.) While the nature of this incident is unclear, its details are irrelevant to the Court's analysis.

'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks*, 438 U.S. 154, 155–56 (1978)), *abrogated on other grounds*, *Michigan v. Bryant*, 562 U.S. 344, 355 (2011). If the defendant makes such a showing, he is entitled to an evidentiary hearing on the issue. *Arbolaez*, 450 F.3d at 1293; *Franks*, 438 U.S. at 155.

This substantiality requirement is not easily met. *Arbolaez*, 450 F.3d at 1294. A defendant's allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof. *Franks*, 438 U.S. at 171. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* And Yearby must show that the affiant, Detective Zanden, not the confidential informant, made the false statements. *See id.*; *United States v. Novaton*, 271 F.3d 968, 987–88 (11th Cir. 2001).

## IV. Analysis

Yearby is not entitled to a *Franks* hearing for three independent reasons, any one of which would warrant a denial. First, he has not shown that any of the statements in the affidavit were false. Second, he has not shown that Detective Zanden deliberately or recklessly included any supposedly false statement in the affidavit. Third, even if Yearby could show that he did not sell the drugs to the informant, the affidavit still established probable cause to search his home.

### A. The Affidavit's Purportedly False Statements

To show that an affiant deliberately or recklessly included a false statement in the affidavit, a defendant must first show that the statement was false. *See Franks*, 438 U.S. at 155–56. In other words, the Court need not inquire into whether an affiant deliberately or recklessly included a *true* statement in the affidavit. *Id.*

Even if Yearby had limited mobility, could not drive, and was staying with his mother between September 15 and November 6, 2023, those circumstances do not establish that he could not have sold drugs to the informant. A friend or family member could have driven him

to the residence for each controlled buy. Thus, Yearby's assertion that he might not have been there does not amount to a "substantial preliminary showing" that he was absent. Because Yearby has made no offer of proof that he did not sell drugs to the informant, it is immaterial whether the affiant acted with reckless disregard for the truth of that statement.[3] *See id.*

### B. Deliberate or Reckless Inclusion of False Statements

Even if Yearby had shown that he did not sell drugs to the informant, he has not shown that Detective Zanden deliberately or recklessly included this information in the affidavit. He instead discusses ways police could have been more certain that they would find evidence of drug dealing in his residence. Under *Franks*, however, a defendant does not make a substantial showing that an affiant recklessly made a false statement merely because he shows that police could have done more to ensure that the affidavit was accurate. *See id.* at 155–56.

Yearby argues that the affidavit does not establish the confidential informant's reliability, and that Detective Zanden acted with reckless disregard for the truth because he did not conduct an independent investigation. (Doc. 40 at 3–4.) But the affidavit is not based only on an anonymous tip, as Yearby seems to suggest. It is instead based on Detective Zanden's investigation in which he had the informant perform three controlled buys, which are generally reliable indicators of illegal drug activity. *See United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006) (per curiam) (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)). Yearby's bare assertion that Detective Zanden did not establish the informant's reliability does not amount to a substantial preliminary showing that he recklessly included false statements about the controlled buys in the affidavit.[4]

Yearby also contends that because Detective Zanden monitored the controlled buys only through live audio transmission, and did not state that he saw the informant enter the residence, the affidavit does not show that the informant bought drugs there. (Doc. 40 at 4.)

---

[3] Both the motion and the Government's response mention Yearby's medical records and his mother's affidavit, (Doc. 32 at 3–4; Doc. 39 at 5–8), neither of which were filed with the Court. Based on the parties' assertions, however, these documents would show only that Yearby was injured as described in this Order, and that he was residing with his mother from September 15 to November 6, 2023. Neither fact would alter the Court's analysis.

[4] Yearby's assertion that the affidavit does not disclose the informant's compensation is likewise irrelevant because it does not suggest that Detective Zanden deliberately or recklessly included false information.

While it is theoretically possible that the informant purchased the drugs from a different unit out of Detective Zanden's sight, that does not suggest that Detective Zanden's statements about the controlled buys were false. And even if the statements about the controlled buys were false, Yearby's speculation about the informant's source of the drugs does not establish that Detective Zanden acted recklessly in including those statements in the affidavit.

Finally, Yearby argues that Detective Zanden acted in reckless disregard for the truth by failing to search the informant's car before each controlled buy. He thus contends that the informant could have already possessed the drugs before the buys. This too is pure speculation. Yearby supplies no offer of proof to explain how the informant's car relates to the controlled buys. He does not even suggest that the informant drove to Yearby's residence. A mere alternative explanation of how the informant could have acquired the drugs does not amount to a substantial showing that Detective Zanden's recklessly included any false statement in the affidavit.

Even if Yearby could show that he did not sell drugs to the informant, his speculations on how police might have done more to ensure that they had correctly identified him as the seller does not suggest that Detective Zanden recklessly included false statements in the affidavit. Because Yearby has not made the required substantial preliminary showing, he is not entitled to a *Franks* hearing.

### C. Finding of Probable Cause

If Yearby had established that he did not sell drugs to the informant and that Detective Zanden recklessly misrepresented the informant's identification of him, the court would excise the affidavit's identifying statements. Even without those statements, however, the affidavit would still establish probable cause.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991)). In reviewing a search warrant's legitimacy, the Court must not interpret the supporting affidavit in a "hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). It must

instead employ a realistic and commonsense approach that is deferential to the magistrate and encourages recourse to the warrant process. *Id.* (citations omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Thus, whether Yearby was the one selling drugs at his residence is irrelevant. What matters is whether there was probable cause to believe that contraband or evidence of drug dealing would be found there. *See United States v. Graham*, 476 F. App'x 839, 842–43 (11th Cir. 2012) (per curiam) (finding that evidence of a controlled buy established probable cause to search a home despite the affiant's misidentification of the seller).

Here, police sent an informant to the residence to purchase drugs three times within two months. (Doc. 40-1 at 2.) While being monitored by live audio transmission, the informant twice bought drugs within the home and once bought drugs in a neighboring driveway. (*Id.*) And before sending the informant to Yearby's home, police searched them for drugs in preparation for the controlled buy. A commonsense view of the totality of circumstances leads to the conclusion that a residence contains drugs when a person enters that residence with no drugs and exits shortly thereafter with drugs. *See Horne*, 198 F. App'x at 871 (citing *Sidwell*, 440 F.3d at 869). The affidavit thus establishes probable cause. Whether it was Yearby who sold the informant the drugs is irrelevant to this conclusion. All that matters is that *someone* sold the informant the drugs at Yearby's residence. *See Zurcher*, 436 U.S. at 556.

Yearby's argument that Detective Zanden monitored the controlled buys only through live audio transmission but did not state in the affidavit that he saw the informant enter the residence does not alter this finding. Again, while it is theoretically possible that the informant purchased the drugs from a different unit out of Detective Zanden's sight, that does not negate the existence of probable cause. *See Sidwell*, 440 F.3d at 869. Probable cause does not require absolute certainty. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). It requires only a substantial chance that evidence may be found. *Id.* And a controlled buy is generally a reliable indicator of illegal drug activity. *Horne*, 198 F. App'x at 871 (quoting *Sidwell*, 440 F.3d at 869). The

affidavit's description of the three controlled buys here was thus sufficient to establish probable cause.

## V. Conclusion

Yearby has not shown that Detective Zanden deliberately or recklessly included any false statements in the affidavit supporting the search warrant. And even if he were able to establish that he was not present at any of the controlled purchases and the portions of the affidavit that identify him were excluded, the warrant is still supported by probable cause. Yearby's motion for a *Franks* hearing and to suppress the evidence obtained during the search of his residence, (Doc. 32), is **DENIED**.

**SO ORDERED**, this 4th day of November, 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**